UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT T. CORE<br>13052 Rose Petal Circle<br>Oak Hill, Virginia 20171<br><br>        Plaintiff,<br><br>v.<br><br>ROBERT S. MUELLER, III, in his official<br>capacity as Director of the United States Federal<br>Bureau of Investigation<br>    Federal Bureau of Investigation<br>    J. Edgar Hoover Building<br>    935 Pennsylvania Avenue, NW<br>    Washington, D.C. 20535-0001<br><br>    SERVE:<br>    Civil Process Clerk<br>    Office of the U.S. Attorney<br>      for the District of Columbia<br>    555 4th Street, N.W.<br>    Washington, D.C., 20530<br><br>        Defendant. | Case No. _____ |

## COMPLAINT

**COMES NOW** Plaintiff, Robert T. Core ("Mr. Core"), by and through counsel, and hereby files this Complaint against Defendant, Robert S. Mueller, III, in his official capacity as Director of the United States Federal Bureau of Investigation ("FBI"), based upon the FBI's violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (the "ADEA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In support of such claims, the Plaintiff hereby states as follows:

## PARTIES

1. The Plaintiff, Mr. Core, is an employee of the United States Government at the FBI. He is currently a Special Agent and is fifty-seven (57) years of age.

2. The Defendant, Robert S. Mueller, III, is Director of the United States Federal Bureau of Investigation, a government agency subject to suit as a federal agency employer under the ADEA and Title VII. Mr. Mueller is the proper defendant under the ADEA, 29 U.S.C. § 633a, and under Title VII, 42 U.S.C. § 2000e-16(c).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, in that this action arises pursuant to the laws of the United States, and in that this action is properly filed against a government agency pursuant to 29 U.S.C. § 633a and 42 U.S.C. § 2000e-16.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (e), since the Defendant's offices are headquartered in this district.

## FACTS

5. On or about January 14, 2003, the FBI posted an internal job vacancy seeking a Supervisory Special Agent ("SSA") of the CR-1, Asset Forfeiture Squad, Washington Field Office (the "CR-1 Position").

6. The job posting included the following requisite qualifications:

   a) Extensive criminal investigative background, including the areas of asset seizure, forfeiture, and money laundering;

   b) Excellent administrative skills;

   c) Exceptional liaison and interpersonal skills;

   d) Exceptional writing and analytical skills.

7. The CR-1 Position was posted as stationary, which allows qualified candidates to apply for a position but gives preference to candidates from within the posting entity, and did not include a requirement that the candidate be an attorney. All previous postings for the CR-1 Position had been non-stationary and included a preferred qualification that the candidate possess a law degree. The result of the stationary posting was that fewer applicants could apply. Mr. Core has a law degree and, as an agent not assigned to the Washington Field Office ("WFO"), did not receive the stationary preference.

8. During 2001, FBI management, including William Welby, Assistant Director for the Administrative Services Division, conducted roundtable discussions at which FBI management directed the recruitment and hiring of younger agents.

9. The FBI removed the attorney preference from the CR-1 Posting and made the CR-1 Posting stationary in order to allow a younger, less qualified female applicant, Special Agent Lisa Miller ("Ms. Miller"), to receive the CR-1 Posting job.

10. Mr. Core, a licensed attorney, submitted a timely application for the CR-1 Position. On April 15, 2003, the FBI awarded the position to a younger, less qualified female applicant, Ms. Miller.

11. There was nothing in the job posting indicating that Mr. Core would not be able to fill the job due to his age, sex, or race.

12. At or about the time Ms. Miller applied for the liaison position, she was a forty-seven (47) year-old FBI employee working asset forfeiture matters in the WFO.

13. Upon information and belief, the FBI desired to hire a younger female because Mr. Core was considered too close to retirement. The hiring of Ms. Miller was in keeping with the FBI's policy and practice to promote from the ranks of younger agents.

14. Mr. Core was well qualified for the position advertised in the CR-1 Posting.

15. Beginning his work in 1979 as a Special Agent, Mr. Core has faithfully served the FBI for over twenty-five (25) years. He began work in the Minneapolis field office working a variety of matters that included white collar crime ("WCC"). He then served on the FBI's Hostage Rescue Team for more than six years, at considerable personal risk. In addition, he is an attorney. He has, without exception, always worked full time.

16. Mr. Core has extensive experience in the financial crimes area and has worked in that area exclusively since 1989. He has been a relief supervisor since 1991.

17. Mr. Core investigated a matter involving three subjects (including a lawyer) who were indicted for fraud, theft of intellectual property rights, and international money laundering in the amount of $11,400,000. This matter involved extensive investigation overseas.

18. Mr. Core investigated and obtained the conviction of a subject for wire fraud and money laundering who ran a Ponzi scheme, which generated $48,000,000. The scheme victimized more than 6,000 people in several states.

19. Mr. Core investigated and directed the Bank of the House of Representatives case, which resulted in 18 convictions to include several members of Congress, some staffers, the Sergeant at Arms, a candidate for Congress, and one lobbyist. He directed the efforts of numerous FBI employees in this matter.

20. He also investigated and obtained a conviction of the chief architect of the Pentagon Renovation Project for embezzling funds.

21. Mr. Core was a case agent in the matter which led to the conviction of the mayor of Washington, D.C.

22. Mr. Core was, at the time of the job posting, and is now directing one of the largest corporate fraud investigations in FBI history. He is directing the efforts of a number of FBI employees in this matter and is the acting Supervisor of his squad.

23. Mr. Core has been presented with the Attorney General's Award for Excellence in Law Enforcement for his work in the Bank of the House of Representatives matter. He has also been recognized by the FBI and United States Attorneys for exceptional performance in other WCC matters.

24. The author of the CR-1 Position, Supervisory Special Agent Bradley Gregor ("SSA Gregor"), sought to promote a younger female agent. SSA Gregor changed the CR-1 Position to stationary and removed the attorney preference in order to make Ms. Miller more competitive for the position. SSA Gregor supported Ms. Miller for the CR-1 Position.

25. Assistant Special Agent in Charge Alex J. Turner ("ASAC" Turner)advised that the CR-1 Position had been revised to attract more candidates. However, by eliminating the preference for attorneys and posting the position as stationary, the field of applicants was actually decreased to allow for the hiring of Ms. Miller.

26. Supervisory Special Agent Dan Foore ("SSA Foore"), an attorney formerly assigned to the CR-1 Asset Forfeiture Squad, said that the only reason to remove the attorney preference was to allow Ms. Miller to receive the CR-1 Position. SSA Foore expressed concern over selecting a non-attorney for the CR-1 Position based on the significant amount of time required for conducting legal reviews in that position.

27. Upon information and belief, Mr. Core was not offered the position because of the FBI's decision to promote a younger female agent.

5

28. ASAC Turner conducted the Career Board for the CR-1 Position on February 27, 2003. The Career Board included supervisors who worked for ASAC Turner and knew Ms. Miller. Only one supervisor on the Career Board had any familiarity with Mr. Core. ASAC Turner did not include any supervisors from the Northern Virginia Resident Agency office who would have known Mr. Core.

29. At the Career Board, ASAC Turner read a statement that the members of the Career Board could consider the candidates' knowledge, skills, and abilities. ASAC Turner emphasized that although the CR-1 Position had historically been filled by an attorney, qualification as an attorney was not a preference in the posting for the CR-1 Position and the Career Board could not consider attorney qualification. ASAC Turner's comments had the effect of removing knowledge, skill, and ability requirements that favored Mr. Core – specifically his legal education and bar membership – and favoring candidates without any legal background, such as Ms. Miller.

30. In furtherance of ASAC Turner's desire to hire younger, female candidates, ASAC Turner selected Special Agent Denise Farmer ("SA Farmer") to provide legal support to the CR-1 squad. SA Farmer, a younger female agent, lacked legal skills comparable to Mr. Core's or sufficient to provide the legal support required by the squad. SA Farmer's sole legal experience upon joining the squad was that she had graduated from law school and had clerked for a judge. SA farmer lacked any background, legal or otherwise, in asset forfeiture that would qualify her to conduct the necessary legal review.

31. ASAC Turner and Ms. Miller arranged for SA Farmer to attend legal training conducted on April 12, 2004. Although the electronic communication advertising the legal

training required attendees to be agents with several years' experience and expressly forbade attendance by probationary agents, SA Farmer, a probationary agent, was directed to attend.

32.     SA Farmer performed the duties that traditionally had been performed by the squad's Supervisor, despite the fact that she was a probationary agent.  In order to permit her adequate time to perform these legal duties, SA Farmer was assigned inactive cases that did not require significant amounts of time or legal review.  Because Ms. Miller was not performing legal duties previously performed by the supervisory agent, she assumed responsibility for abandonment cases, which generally are assigned to newer agents.  It is rare for a supervisor to be assigned case work.

33.     During her deposition, SA Farmer stated that on one occasion, her signature was forged on an asset forfeiture package.  The package lacked any complicated legal issues.  SA Farmer also stated that her signature may have been forged because the package contained less complicated legal issues, thereby freeing SA Farmer from its review and allowing her to devote more time to more complicated packages.

34.     ASAC Turner required most agents in the office, including SA Farmer, to operate informants.  Because SA Farmer devoted her time to conducting legal duties, she was "off of the street" and was unable to meet and develop informants.  In order to allow Farmer to meet the informant requirement, Ms. Miller assigned SA Farmer one of Ms. Miller's informants.  It is contrary to FBI policy for a supervisor to have informants without explicit approval from FBI Headquarters, which Ms. Miller did not have.  Although SA Farmer had not met or spoken with the informant, SA Farmer signed documents in the informant file at the behest of Ms. Miller indicating that she had held meetings and had contacts with the informant even though she had not.

**PROCEDURAL STATUS**

35.     Mr. Core filed a timely complaint with the United States Equal Employment Opportunity Commission ("EEOC"), EEOC No. 100-2004-00753X (the "EEOC Adjudication").

36.     Mr. Core filed a Notice of Removal to Federal Court of the EEOC Adjudication on June 23, 2005.

37.     On June 23, 2005, the Administrative Judge assigned to conduct a hearing in the EEOC Adjudication granted Mr. Core's request to withdraw the EEOC Adjudication from the hearings process in anticipation of filing suit in federal court.

38.     This action is timely filed.

**COUNT I**
**(Violation of the Age Discrimination in Employment Act)**

39.     The allegations contained in Paragraphs 1 through 38 are re-alleged and incorporated herein by reference as if set forth in their entirety.

40.     The ADEA prohibits a federal employer from discriminating against its employees who are in the protected class, age 40 and older.  Discrimination occurs when a federal employer chooses to promote a younger, less qualified individual in place of the employee in the protected class.  29 U.S.C. §§ 621-634.

41.     Mr. Core, age 55 at the time of Ms. Miller's selection for the CR-1 Position, is within in the age group protected by the ADEA.

42.     Mr. Core applied for the CR-1 Position through proper procedures and was qualified for the position.

43.     Mr. Core was not hired despite his qualifications.

44.     Ms. Miller, a younger female candidate, was less qualified for the position, and was awarded the position.

45. SA Farmer, a younger female candidate, was less qualified for the position of providing legal support to the CR-1 squad, and was awarded that position. The necessity of hiring SA Farmer to provide legal support for the CR-1 squad demonstrates that Ms. Miller was less qualified to fulfill the CR-1 Position.

46. Because the FBI promoted a younger, less qualified individual in place of Mr. Core, the FBI discriminated against Mr. Core based upon his age, and violated the ADEA.

47. This discrimination based on age was egregious.

## COUNT 2
### (Violation of Title VII of the Civil Rights Act of 1964)

48. The allegations contained in Paragraphs 1 through 47 are re-alleged and incorporated herein by reference as if set forth in their entirety.

49. Title VII prohibits employers, including federal employers, from discriminating against its employees on the basis of race, color, religion, sex, or national origin. Discrimination occurs when a federal employer chooses to promote a less qualified female candidate in place of a more qualified male candidate. 42 U.S.C. § 2000e *et seq.*

50. Mr. Core applied for the CR-1 Position through proper procedures and was qualified for the position.

51. Mr. Core was not hired despite his qualifications.

52. Ms. Miller, a younger female candidate, was less qualified for the position, and was awarded the position

53. SA Farmer, a younger female candidate, was less qualified for the position of providing legal support to the CR-1 squad, and was awarded that position. The necessity of hiring SA Farmer to provide legal support for the CR-1 squad demonstrates that Ms. Miller was less qualified to fulfill the CR-1 Position.

54. Because the FBI promoted a less qualified female candidate in place of Mr. Core, the FBI discriminated against Mr. Core based upon his sex and violated Title VII.

55. This discrimination based on sex was egregious.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Robert T. Core prays that this Court enter judgment in his favor and against Defendant in the form as follows:

a) Declare that Defendant Robert S. Mueller, III, in his official capacity as Director of the United States Federal Bureau of Investigation, has violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, through his conduct in promoting a younger, less qualified female individual for the CR-1 Position;

b) Declare that Defendant Robert S. Mueller, III, in his official capacity as Director of the United States Federal Bureau of Investigation, has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, through his conduct in promoting a younger, less qualified female individual for the CR-1 Position;

c) Award Plaintiff back pay from the date of Ms. Miller's promotion, April 15, 2003, until the present, at a rate commensurate with the position to which Ms. Miller was promoted;

d) Award Plaintiff front pay commensurate with the position to which Ms. Miller was promoted, or promote Defendant to a position commensurate with the CR-1 Position, a Supervisory Special Agent position.

e)	Award Plaintiff his costs, including recoverable attorneys' fees, pre-judgment and post-judgment interest; and

f)	Award such other relief to which Plaintiff may be entitled.

Respectfully submitted,

ROBERT T. CORE


_____
Thomas O. Mason, Esq. DC # 460408
Francis E. Purcell, Jr., Esq. DC # 451770
Williams Mullen, A Professional Corporation
8270 Greensboro Drive, Suite 700
McLean, Virginia 22102
Phone: (703) 760-5200
Fax: (703) 748-0244


Counsel for Plaintiff, Robert T. Core

1166183.01

11